IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Theodore Carter *et al.* | : | |
| | : | Case No. C-1-03-370 |
| Plaintiffs | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING IN PART |
| C&D Waste Services *et al.* | : | AND DENYING IN PART |
| | : | DEFENDANTS' MOTIONS FOR |
| Defendants | : | SUMMARY JUDGMENT AND |
| | : | DENYING MOTIONS TO |
| | : | STRIKE |

This matter comes before the Court on Defendants C&D Waste Services, Wendell Shelton, and Terry Ramey (collectively "C&D")'s Motion for Summary Judgment Regarding Plaintiff Lawrence Williams' Claims (doc. #39), Plaintiff Ted Carter's Claims (doc. #40), Plaintiff H. Todd Smith's Claims (doc. #43), and Defendants' Motions to Strike the Declarations of Lawrence Williams (doc. #52), David D. Kammer (doc. #54), Herbert T. Smith (doc. #55), and Ted Carter (doc. #57). Plaintiffs Williams, Carter, and Smith all claim that, among other things, C&D terminated their employment in violation of federal and state law proscribing race discrimination. Williams, Carter, and Smith also claim that C&D terminated their employment as retaliation for exercising protected rights in violation of state and federal law. Finally, Williams and Smith bring claims under Ohio law for termination of employment in violation of public policy. For the reasons set forth below, C&D's motions for summary judgment are **DENIED** as to all Plaintiffs' discrimination and retaliation claims and Smith's public policy

1

claims but **GRANTED** as to Williams' public policy claim. C&D's motions to strike are **DENIED AS MOOT**.

I.   **FACTUAL BACKGROUND**

C&D operated a local waste collection and hauling service from 1998 until 2004.[1] Defendant Wendell Shelton was its Sales Manager and then its General Manager, and Defendant Terry Ramey was its Operations Manager. Jerry Shelton, Wendell Shelton's brother, also worked in a management capacity. He participated in disciplining front load drivers and in hiring and training those drivers. (Jerry Shelton depo. at 14-16, 30-31.) Plaintiffs Ted Carter, Todd Smith, and Lawrence Williams were the only African-American front load drivers at C&D. C&D discharged Carter, Smith, and Williams between October of 2002 and May of 2003.

According to Carter, Smith, and Williams, C&D treated white drivers more favorably than black drivers. Williams testified that he was replaced by a white driver on a favorable route because the white driver received help on his runs in a way that black drivers did not. (Williams depo. at 90-92, ex. 9) Smith was unable to earn incentive pay because he was a second shift driver rather than a traditional front load driver, but, according to Smith, a white nontraditional front load driver received incentive pay. (Smith depo. at 85-87.) Smith also testified that at one point he had driven the same nontraditional route that the white front load driver receiving incentive pay drove, but that Smith received no incentive pay when he drove that route. (Id.)

Smith and Williams both received various disciplinary warnings prior to termination. In August of 2002, Williams filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") based on various incidents, including his failure to be made

---

[1]Waste Management purchased C&D in 2004. (Wendell Shelton depo. at 8-9.)

a "swing man," a position entitled to more pay. Carter filed a charge of race discrimination with the EEOC in September of 2002 based on a decrease in hours and incentive pay.

In October of 2002, Wendell Shelton informed Carter that he was being laid-off due to a lack of work. At an in-person meeting after his layoff, Carter informed Shelton that he had experienced dizzy spells and did not think that he could drive a truck (Wendell Shelton depo. at 137-38), and he and Shelton discussed the possibility of his being rehired as a dispatcher. (Carter depo. at 29-32.) Carter was never contacted again and a white driver became the dispatcher. (Id. at 32-34.)

According to the testimony of former front load driver Joey Newton, who is white, during his hiring process in November of 2002, Jerry Shelton told him "we have a couple of nigger drivers that we – you know, we don't like them, we don't want them around, and that's basically what I'm hiring you for, to replace them." (Newton depo. at 70.) Shelton later told Newton that Newton was "going to be replacing one of the nigger drivers . . . Lawrence [Williams]." (Newton depo. at 85.) According to Newton, when he protested that Shelton's actions put Newton in the unenviable position of choosing between working and engaging in racist behavior, Shelton responded "[t]his is . . . me and my brothers' [sic] company, and we do what the hell we want to . . . [i]f you don't like it, find employment elsewhere." (Newton depo. at 103.) Shelton denies ever making any such comments.

In January of 2003, Wendell Shelton called Williams into a meeting and informed him that C&D had a videotape of him clocking in Todd Smith. (Williams depo. at 119.) Clocking in or out other employees violates C&D company policy. According to Williams, numerous other C&D employees, including Wendell Shelton himself, clocked other employees in and out

3

without repercussion. (Williams depo. ex. 3 at ¶ 5) On January 27, 2003, Wendell Shelton terminated Williams for clocking in Smith. (Williams depo. at 119.)

On May 21, 2003, Williams, Carter, and Smith filed this action in federal court. A week later, Wendell Shelton terminated Smith, the only Plaintiff still working at C&D, for tardiness and for not showing up to work earlier in the month while failing to follow call-in procedure. (Smith depo. ex. 23.) Smith told Wendell Shelton that working on the day in question would have caused him to exceed the maximum number of work hours set by the Department of Transportation. (Id.) According to Smith, he asked the office workers to so inform Shelton prior to missing work and tried himself to call Shelton. (Id.)

## II.     MOTIONS TO STRIKE

C&D moves to strike the declarations of Williams, Carter, Smith, and their attorney David Kammer. C&D argues that Plaintiffs' declarations contradict their sworn deposition testimony and do not comport with the circumstances under which a deponent is permitted to change his sworn deposition testimony under Rule 30(e). C&D argues that the declaration of Plaintiffs' attorney David Kammer should be stricken because it contains unauthenticated documents and speculative allegations. As the Court did not consider any of the declarations in deciding C&D's motions for summary judgment, it **DENIES AS MOOT** C&D's motions to strike the declarations of Williams, Carter, Smith, and Kammer.

## III.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue

of material fact, and the evidence, together with all inferences that permissibly can be drawn therefrom, must be read in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings, but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

## III. ANALYSIS

Williams, Carter, and Smith all claim that, among other things, C&D terminated their employment in violation of federal and state law proscribing race discrimination[2] and proscribing retaliation for exercising protected rights. Williams and Smith also bring claims under Ohio law for termination in violation of public policy.

### A. Race Discrimination Claims

A Title VII plaintiff may prove discrimination by direct or circumstantial evidence. "The direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only

---

[2]Because "Ohio courts examine Title VII . . . and state employment-discrimination claims under federal case law interpreting Title VII," Bucher v. Sibcy Cline, Inc., 738 N.E.2d 435, 442 (Ohio Ct. App. 2000), Plaintiffs' state law discrimination claims stand or fall with the federal ones. Therefore, the Court need analyze only the Title VII claims.

prove one or the other, not both." Kline v. Tennessee Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997). Once a plaintiff introduces direct evidence that he was terminated because of his race, the burden of persuasion shifts to the employer to prove that it would have terminated the plaintiff notwithstanding any discriminatory motive. Johnson v. University of Cincinnati, 215 F.3d 561, 577 (6th Cir. 2000) (citing Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1081) (6th Cir. 1994)).

The Sixth Circuit has explained that "a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent." Nguyen v. Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). Newton's deposition testimony that manger Jerry Shelton stated that "we have a couple of nigger drivers that we – you know, we don't like them, we don't want them around, and that's basically what I'm hiring you for, to replace them" constitutes direct evidence of racial discrimination.[3]

As Plaintiff have established a prima facie case of discrimination, the burden then shifts to C&D to articulate a legitimate, non-discriminatory reason for Plaintiffs' discharge. C&D cites to Williams' violation of the clocking-in policy, Smith's repeated disciplinary problems and failure to come to work, and the fact that Carter was laid off for lack of work rather than terminated. Plaintiffs can refute C&D's articulated reason for their discharge "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." Wexler v.

---

[3]C&D argues that because Wendell Shelton, and not Jerry Shelton, was the decision-maker with respect to plaintiffs' termination, Jerry Shelton's remarks are irrelevant. Because the evidence shows that Jerry Shelton participated as a member of the management team in employment decisions regarding front load drivers, C&D's argument must fail.

White's Fine Furniture, 317 F.3d 564, 576 (6th Cir. 2003) (internal quotations omitted).

Since Williams has produced evidence that other workers violated the clocking-in policy and were not disciplined, he has raised a genuine issue of material fact as to whether his conduct was insufficient to warrant the challenged termination. Likewise, since Smith has produced evidence that Shelton may have terminated him at least in part because Smith failed to work in excess of DOT regulations and for his failure to notify Shelton of such even though Smith attempted to do so, he has raised a genuine issue of material fact as to whether his termination was pretextual. (Smith depo. ex. 23.) Finally, since Carter was laid off due to an alleged shortage of work but since no other front load drivers were laid off at the same time as Carter (Wendell Shelton depo. at 114) and C&D hired Joey Newton as a front load driver only a month later (Newton depo. ex. 6), Carter has also raised a genuine issue of material fact as to whether his discharge was pretextual. Summary judgment on Plaintiffs' race discrimination claims must therefore be **DENIED**.

  B.  **Retaliation Claims**

To establish a prima facie case of unlawful retaliation, Plaintiffs must show (1) that they engaged in activity that Title VII protects; (2) that C&D knew that they engaged in this protected activity; (3) that C&D subsequently took an employment action adverse to them; and (4) that a causal connection exists between the protected activity and the adverse employment action. Abbott v. Crown Motor Co., Inc., 348 F.3d 537, 542 (6th Cir. 2003). Williams and Smith filed a charge of race discrimination with the EEOC in August of 2002, and Carter filed the same in September of 2002. They were all discharged between October of 2002 and May of 2003.

C&D does not dispute the first, second, or third elements; rather, it contends that

Williams, Smith, and Carter cannot show a causal connection exists between the protected activity and the adverse employment action. Williams, Smith, and Carter have raised a genuine issue of material fact on the causal connection requirement. Carter was laid off one month after filing a charge of discrimination with the EEOC, Williams was terminated five months after filing a charge, and Smith was terminated one week after filing this action in federal court. "Although temporal proximity alone will not support an inference in the face of compelling evidence to the contrary, the proximity in time between protected activity and adverse employment action may give rise to an inference of a causal connection." Ford v. Gen. Motors Corp., 305 F.3d 545, 554-55 (6th Cir. 2002) (internal citations omitted). The close temporal proximity between Williams' and Carter's complaints with the EEOC and their discharge and the close temporal proximity between Smith's filing of this lawsuit and his termination support an inference of causal connection between their protected activity and the adverse employment actions taken against them, and C&D had presented no compelling evidence to the contrary.

The legitimate, nondiscriminatory reason and evidence of pretext discussed supra apply here with equal force. The Court need not proceed with the McDonnell Douglas framework for Plaintiffs' retaliation claims because the same analysis as above applies. Summary judgment on Plaintiffs' retaliatory discharge claims must therefore be **DENIED**.

### C. Williams' Public Policy Claim

Williams also brings a public policy claim based on Ohio Revised Code section 4123.90. Section 4123.90 prohibits employers from taking adverse employment actions against employees based on an employee filing and pursuing a worker's compensation claim. Section 4123.90 contains a strict procedural mandate with which Williams has failed to comply. See Covucci v.

Service Merchandise Co., No. 98-3823, 2004 WL 2367970, at *3 (6th Cir. Oct. 20, 2004). Section 4123.90 provides that any action that an employee brings to remedy a violation of 4123.90 "shall be forever barred unless filed within one hundred eighty days immediately following the [adverse action], and no action may be instituted or maintained unless the employer has received written notice of a claimed violation . . . within ninety days immediately following the [adverse action]." Ohio Rev. Code § 4123.90. C&D claims that it has never received written notice of a claimed violation of section 4123.90 other than the institution of this lawsuit. Williams admits that he has no current record of such notice. (Doc. #48 at 19.) Because in responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings, but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment," Anderson, 477 U.S. at 257, C&D's motion for summary judgment on Williams' public policy claim must be **GRANTED**.

      **D.**     **Smith's Public Policy Claim**

Smith brings a public policy claim against C&D, claiming that C&D terminated him, in part, for protesting C&D's failure to abide by DOT's regulations setting maximum hours for drivers. A plaintiff bringing a common law claim of wrongful discharge in violation of Ohio public policy must show: (1) the existence of a clear public policy manifested in a state or federal constitution, statute or administrative regulation, or in the common law; (2) that the employee's termination would jeopardize that public policy; (3) that the employee's termination was motivated by conduct related to the public policy; and (4) that the employer lacked an overriding legitimate business justification. Kulch v. Structural Fibers, Inc., 677 N.E.2d 308, 321 (Ohio 1997).

9

C&D does not dispute whether Smith has shown the first and second elements of the public policy claim.  C&D instead contends that Smith cannot show the third element, that his termination was motivated by conduct related to the DOT regulations, because he filed a complaint with OSHA after his termination.  C&D also argues that Smith cannot show the fourth element, that C&D lacked an overriding legitimate business justification for terminating him.  Since Smith's theory of this claim is not that C&D terminated him for filing an OSHA complaint but for refusing to work hours in excess of DOT regulations, C&D's argument on the third element of Smith's public policy claim is without merit.  Likewise, since Smith has already raised a genuine issue of material fact as to whether C&D's articulated reason for his discharge is pretextual, Smith has raised a genuine issue of material fact as to whether C&D has an overriding legitimate business justification for his termination.  C&D's motion for summary judgment on Smith's public policy claim must therefore be **DENIED**.

**IV.   CONCLUSION**

For the foregoing reasons, C&D's motions for summary judgment (docs. #39, 40, 43) are **DENIED** as to Plaintiffs' discrimination and retaliation claims and as to Smith's public policy claim but **GRANTED** as to Williams' public policy claim.  C&D's motions to strike (docs.#52, 54, 55, 57) are **DENIED AS MOOT**.

IT IS SO ORDERED.

                                                           ___s/Susan J. Dlott_____
                                                         Susan J. Dlott
                                                         United States District Judge